1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6

HOLLY J. WILSON,

Case No. C09-5411RJB-KLS

7
8

Plaintiff,

REPORT AND RECOMMENDATION

v.

9
10

MICHAEL J. ASTRUE, Commissioner of
Social Security,

Noted for June 11, 2010

11

Defendant.

12
13
14
15
16

Plaintiff, Holly J. Wilson, has brought this matter for judicial review of the denial of her

17

applications for disability insurance and supplemental security income ("SSI") benefits.  This

18

matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

19

636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v.

20

Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the

21

undersigned submits the following Report and Recommendation for the Court's review.

22

FACTUAL AND PROCEDURAL HISTORY

23

Plaintiff currently is 38 years old.[1] Tr. 33.  She has a high school education and past work

24

experience as a production assembler. Tr. 30, 79, 84, 103, 108, 128.

25
26

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding
Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference
of the United States.

REPORT AND RECOMMENDATION - 1

On February 6, 2003, plaintiff filed applications for disability insurance and SSI benefits, alleging disability as of April 12, 1999, due to depression, anxiety and a traumatic head injury. Tr. 68-70, 78, 102, 500-02, 515.  Her applications were denied initially and on reconsideration. Tr. 33-35, 40, 503-04, 508-09, 515.  A hearing was held before an administrative law judge ("ALJ") on January 26, 2006, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert . Tr. 684-707.  A vocational expert appeared also appeared at the hearing, but did not testify. Tr. 684-707.

On April 7, 2006, the ALJ issued a decision in which he determined plaintiff to be not disabled, finding specifically in relevant part that plaintiff was capable of returning to her past relevant work. Tr. 515-26.  On January 11, 2007, the Appeals Council granted plaintiff's request for review, remanding the matter to that ALJ to conduct further administrative proceedings. Tr. 538-40.  Another hearing was held on June 21, 2007, at which plaintiff, represented by counsel, appeared and testified, as did a different vocational expert. Tr. 708-20.

On September 7, 2007, the ALJ issued a second decision, in which he again determined plaintiff to be not disabled, finding specifically in relevant part:

(1)    at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2)    at step two, plaintiff had "severe" impairments consisting of a cognitive disorder, an anxiety disorder, a personality disorder, substance abuse in remission, and left hemiparesis;

(3)    at step three, (i) during the period of April 12, 1999 to February 10, 2003, plaintiff's impairments, including her substance abuse disorder, met the criteria of  20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), §§ 12.02, 12.06, 12.08, and 12.09 in combination, and therefore she was under

---

[2] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

REPORT AND RECOMMENDATION - 2

a disability during that period, and (ii) if plaintiff had stopped her substance abuse during the same period, none of her impairments either alone or in combination would meet or medically equal the criteria of any of those set forth in the Listings;

(4)     after step three but before step four, plaintiff had the residual functional capacity ("RFC") to perform simple, repetitive work at all exertional levels, with only occasional gripping with the left, non-dominant hand;

(5)     at step four, in the absence of substance abuse, plaintiff was capable of performing her past relevant work; and

(6)     at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 18-32.  The ALJ further found plaintiff's substance abuse disorder was a contributing factor material to the determination of disability during the period of April 12, 1999 to February 10, 2003. Tr. 31.  Plaintiff's request for review was denied by the Appeals Council on May 6, 2009, making the ALJ's decision the Commissioner's final decision. Tr. 8; 20 C.F.R. § 404.981, § 416.1481.

On July 8, 2009, plaintiff filed a complaint in this Court seeking review of the ALJ's second decision. (Dkt. #1-#3).  The administrative record was filed with the Court on October 1, 2009. (Dkt. #10).  Plaintiff argues the ALJ's decision should be reversed and remanded to the Commissioner for an award of benefits or, in the alternative, for further administrative proceedings, for the following reasons:

(a)     the ALJ erred in finding plaintiff's substance abuse to be a factor material to the determination of disability;

(b)     the ALJ erred in evaluating the medical evidence in the record;

(c)     the ALJ erred in finding plaintiff's impairments did not meet or medically equal Listing 12.04C;

(d)     the ALJ erred in assessing plaintiff's credibility;

(e)     the ALJ erred in assessing plaintiff's residual functional capacity;

REPORT AND RECOMMENDATION - 3

(f)   the ALJ erred in finding plaintiff capable of returning to her past relevant
      work; and

(g)   the ALJ erred in finding plaintiff capable of performing other work existing
      in significant numbers in the national economy.

For the reasons set forth below, the undersigned disagrees that the ALJ erred in determining

plaintiff to be not disabled, and therefore recommends that the ALJ's decision be affirmed.

<u>DISCUSSION</u>

This Court must uphold the Commissioner's determination that plaintiff is not disabled if

the Commissioner applied the proper legal standard and there is substantial evidence in the

record as a whole to support the decision.  <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir.

1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v.

Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a

preponderance.  <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v.

Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one

rational interpretation, the Court must uphold the Commissioner's decision.  <u>Allen v. Heckler</u>,

749 F.2d 577, 579 (9th Cir. 1984).

I.     <u>Plaintiff's Substance Abuse as a Material Factor</u>

A claimant may not be found disabled if alcoholism or drug addiction would be "a

contributing factor material to the Commissioner's determination" that the claimant is disabled.

<u>Bustamante v. Massanari</u>, 262 F.3d 949, 954 (9th Cir. 2001) (citing 42 U.S.C. §§ 423(d)(2)(C),

1382c(a)(3)(J)).  The Social Security Regulations also require that the Commissioner determine

whether "drug addiction or alcoholism is a contributing factor material to the determination of

disability."  <u>Id.</u> (citing 20 C.F.R. § 404.1535(a), § 416.935(a)).  To determine whether alcoholism

REPORT AND RECOMMENDATION - 4

or drug addiction is a materially contributing factor, the ALJ first must conduct the five-step sequential disability evaluation process "without separating out the impact of alcoholism or drug addiction." Id. at 955.

If the ALJ finds the claimant is not disabled, "the claimant is not entitled to benefits." Id. If the claimant is found disabled, however, "and there is 'medical evidence of [his or her] drug addiction or alcoholism,'" the ALJ determines "if the claimant 'would still [be found] disabled if [he or she] stopped using alcohol or drugs.'" Id. (citing 20 C.F.R. § 404.1535, § 416.935). If it is determined that a claimant's current limitations "would remain once he [or she] stopped using drugs and alcohol," and those limitations are disabling, "then drug addiction or alcoholism is not material to the disability, and the claimant will be deemed disabled." Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001).

As noted above, the ALJ in this case found that plaintiff's substance abuse disorder was a contributing factor material to the determination of disability during the period of April 12, 1999, and February 10, 2003, and therefore that plaintiff was not eligible for benefits during any of that period. Tr. 31. Pointing to "Question No. 27 of Emergency Teletype EM-96200" (Dkt. #13, p. 20) – in which the Commissioner directs disability examiners to not make a finding of materiality in those situations where a medical or psychological consultant cannot project what limitations would remain if drug or alcohol abuse was stopped[3] – plaintiff argues the ALJ improperly made such a finding here. But, as explained in greater detail below, the substantial objective medical evidence in the record supports the ALJ's materiality finding, even if the above internal policy guideline was binding on this Court. See Moore v. Apfel, 216 F.3d 864, 868-69 (9th Cir. 2000) (noting Social Security Administration's Hearing, Appeals and Litigation

---

[3] https://secure.ssa.gov/apps10/public/reference.nsf/links/04292003041931PM.

REPORT AND RECOMMENDATION - 5

1    Law Manual, unlike Code of Federal Regulations, is strictly internal guidance tool, and, as such,

2    does not carry force and effect of law).

3    II.      The ALJ's Evaluation of the Medical Evidence in the Record

4            The ALJ is responsible for determining credibility and resolving ambiguities and

5    conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Where

6    the medical evidence in the record is not conclusive, "questions of credibility and resolution of

7    conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir.

8    1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the

9

10   Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether

11   inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and

12   whether certain factors are relevant to discount" the opinions of medical experts "falls within this

13   responsibility." Id. at 603.

14
         In resolving questions of credibility and conflicts in the evidence, an ALJ's findings
15
     "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this
16
     "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,
17
     stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences
18

19   "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may

20   draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

21   F.2d 747, 755, (9th Cir. 1989).

22
         The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted
23
     opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.
24

25   1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can

26   only be rejected for specific and legitimate reasons that are supported by substantial evidence in

REPORT AND RECOMMENDATION - 6

the record." Id. at 830-31.  However, the ALJ "need not discuss all evidence presented" to him or

her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation

omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence

has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield

v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of

those who do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not

accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately

supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social

Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d

947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An

examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining

physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute

substantial evidence if "it is consistent with other independent evidence in the record." Id. at

830-31; Tonapetyan, 242 F.3d at 1149.

A.     Ms. Weston

In late April 2006, one of plaintiff's treatment providers, Carla Weston, A.R.N.P., opined

that she was "rather surprised" plaintiff "recently was notified that she was turned down for her

social security disability," as plaintiff was "certainly disabled and unable to work." Tr. 643.  The

ALJ addressed Ms. Weston's opinion as follows:

> Carla Weston, ARNP, a treating nurse practitioner, opines the claimant is
> disabled and unable to work.  She indicates the claimant's traumatic head
> injury in 1989 has caused cognitive slowing and she has a hard time
> understanding instructions and processing information. (Exhibit 24F-426).
> Ms. Weston is not an acceptable medical source and she has not conducted
> any cognitive testing.  Her opinion is given little weight.  The claimant has

REPORT AND RECOMMENDATION - 7

1
2

> been able to work in the past despite residuals of her accident.  Dr. [Jack M.]
> Litman,[ Ph.D.,] who conducted extensive testing, found she retained the
> ability to be productive in a semi-skilled job (Exhibit 19F-345).

3
4
5
6
7
8
9

Tr. 29.  Plaintiff argues the mere fact that Ms. Weston is not an "acceptable medical source" is not a legitimate reason to reject her opinion.  The undersigned agrees that this alone is not a valid basis for doing so, as evidence from "other sources," including other "medical sources" such as nurse practitioners, may be used to "show the severity" of a claimant's impairments and their effect on the claimant's ability to work. 20 C.F.R. § 404.1513(d), § 416.913(d); see also Sprague v. Bowen, 812 F.2d 1226 (9th Cir. 1987) (citing 20 C.F.R. § 404.1513(e)(2)).

10
11
12
13
14
15
16
17
18
19
20
21
22
23

On the other hand, because it is true that as a nurse practitioner, Ms. Weston is not an "acceptable medical source" as defined in the Social Security Regulations, her opinions may be given less weight than those of acceptable medical sources. See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. § 404.1513(a), (d), § 416.913(a), (d) (licensed physicians and licensed or certified psychologists are acceptable medical sources).  Here, in addition to correctly noting that Ms. Weston was not an acceptable medical source, the ALJ went on to point out that Dr. Litman, who – unlike Ms. Weston – "conducted extensive [psychological] testing" and found the "ability to be productive in a semi-skilled job" had been retained. Tr. 29; see also 279-85. This was a proper basis for rejecting Ms. Weston's disability opinion.  The ALJ also correctly noted that plaintiff was able to perform work in the past, despite the residuals from her traumatic head injury, which Ms. Weston stated were the cause of her inability to work, and which further calls into question that disability opinion.[4]

24
25
26

---

[4] Plaintiff also argues the ALJ erred in failing to discuss Ms. Weston's many treatment notes or any of her clinical findings.  But plaintiff fails to state what among all those progress notes and clinical findings contradicts or calls into question the propriety of the ALJ's determination here.  Accordingly, this argument is without merit, and therefore is rejected.

REPORT AND RECOMMENDATION - 8

B.     Ms. Young

In mid-February 2005, Jennifer Young, M.A., one of plaintiff's mental health counselors, diagnosed her with a mood disorder due to head trauma. Tr. 475.  Ms. Young opined that this condition prevented plaintiff from participating in employment-related or job search activities, but would so incapacitate her for a period of only six months. Id.  In early July 2006, Ms. Young again opined that plaintiff's mental health condition prevented her from participating in employment-related or job search activities, and that her incapacitation would last for a period of no more than six months. Tr. 558.

With respect to Ms. Young's opinions, the ALJ found:

> The undersigned has given little weight to the opinion of Jennifer Young, M.A., that the claimant is unable to work due to mental impairments. (Exhibit 14F-167, 19F-343, 21F-366).  She reported in February 2005 that the claimant's "mood disorder due to head trauma" prevents her from participating in employment or job search activities. (Exhibits 12F and 19F-357).  Other information she reported suggests that the claimant's impairment has not been of a severity to preclude all work activity for a period of at least 12 consecutive months after she discontinued substance abuse on February 10, 2003.  In February 2005 Ms. Young reported anticipating that the claimant's condition would last for a period of only six months, at which time her case would be reviewed.  In addition, she reported the claimant was participating in only minimal treatment including case management twice per month, counseling twice per month, and medication management monthly.  In July 2006 she again reported that she anticipated the claimant would be incapacitated for 6 months (Exhibit 21F-366).  A mental health professional with a Master's degree is not considered to be an acceptable medical source by the Social Security Administration (20 CFR 404.1513 and 416.913).

Tr. 29.  Plaintiff argues the ALJ erred in so finding.  Again, the undersigned disagrees.  Plaintiff first asserts the fact that Ms. Young only opined she would be unable to work for a period of six months, is not a legitimate reason to reject her opinion that the inability to work persisted beyond those periods.  But plaintiff points to nothing in Ms. Young's opinions that indicate she believed plaintiff would be so incapacitated beyond six months, nor does Ms. Young state such anywhere

therein. See Tr. 475, 558.  In addition, because plaintiff must establish she is unable to "to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which . . . has lasted or can be expected to last for a continuous period of not

less than 12 months," this was a valid basis upon which the ALJ rejected Ms. Young's opinions.

42 U.S.C. § 423(d)(1)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

       The undersigned does agree that, unlike in regard to Ms. Weston, it was improper for the

ALJ to reject Ms. Young's opinions solely on the basis that she was not an acceptable medical

source for the reasons discussed above.  In addition, it is not clear what the ALJ meant by "other

information" indicative of lesser severity reported by Ms. Young or that receiving mental health

counseling and case management twice a month, along with medication management on a

monthly basis as well, really amounts to "minimal treatment."  Nevertheless, as explained in the

previous paragraph, the ALJ did provide at least one valid reason for discounting Ms. Young's

two disability opinions.

       C.    Dr. Johnson

       Also in his decision, the ALJ found as follows:

> Paul Johnson, D.O., a treating physician, opined in February 2007 that the
> claimant was unable to work due to her medical condition. (Exhibit 22F).  He
> reported that the claimant has experienced chronic neck and back pain, left
> side paresthesias and memory problems since her motor vehicle accident.  He
> opined that her pain causes difficulties in her ability to perform jobs and that
> she has had trouble holding jobs due to memory issues. (Exhibit 23F-401).
> Dr. Johnson provides no specific limitations.  He notes her impairments are
> longstanding and the claimant has reported her left side symptoms have not
> changed since age 16.  The claimant has been able to work in the past despite
> the residuals of her injuries.  No etiology has been established for the
> claimant's pain complaints.  She has reported improvement with osteopathic
> manipulation and physical therapy.  She has required no medication other than
> Ibuprofen.  The opinion of Dr. Johnson involves vocational issues of which he
> has no expertise.  It is given little weight.

Tr. 29.  Plaintiff argues the ALJ failed to set forth any convincing reason for giving little weight

REPORT AND RECOMMENDATION - 10

to Dr. Johnson's disability opinion.  The undersigned once more disagrees.

First, as the ALJ points out, Dr. Johnson's February 2007 disability opinion contains no specific functional limitations, let alone objective clinical findings to support that opinion, but merely appears to rely on plaintiff's own self-reports and subjective complaints. See Tr. 559, 563.  Nor do any of the objective findings or diagnoses set forth in a progress note Dr. Johnson completed based on an examination performed that month, indicate anything in the way of disabling limitations or an inability to work. See Tr. 678.  Indeed, plaintiff herself reported at the time that she responded to osteopathic manipulation and denied any worsening of her symptoms. Id.  The ALJ thus did not err in discounting Dr. Johnson's disability opinion on this basis. See Batson, 359 F.3d at 1195 (ALJ need not accept opinion of treating physician if it is inadequately supported by clinical findings).

The ALJ also properly discounted Dr. Johnson's opinion on the basis that the symptoms reported were longstanding residuals from plaintiff's traumatic injury, and that she had been able to work in the past despite those residuals.  Plaintiff argues this fact is irrelevant, because Dr. Johnson based his disability opinion on her current condition, as revealed by his current clinical findings.  As discussed above, however, no such clinical findings were provided to support Dr. Johnson's opinion that plaintiff currently was unable to do any work.  Because the ALJ properly noted this opinion instead was based on the same unchanged residuals, plaintiff's ability to work in the past despite those residuals was relevant and therefore sufficient to call into question Dr. Johnson's disability opinion. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancies between medical opinion source's functional assessment and that source's clinical notes, recorded observations and other comments regarding claimant's capabilities is clear and convincing reason for not relying on that assessment); see also Weetman v. Sullivan, 877 F.2d

20, 23 (9th Cir. 1989).

While the undersigned does agree Dr. Johnson's February 2007 progress note contains medical diagnoses that <u>could</u> provide the underlying etiology for the disability opinion issued four days earlier (<u>see</u> Tr. 678), nowhere in the disability opinion itself was any link made to actual diagnoses.  The ALJ also did not err in noting the evidence in the record indicating the lack of prescribed medication, as well as plaintiff's reported improvement on both osteopathic manipulation and physical therapy. <u>See, e.g.,</u> Tr. 564-65, 567-68, 570-73, 575, 674-76, 678. Indeed, less than two months after he issued his disability opinion, Dr. Johnson noted plaintiff "reported 75 percent improvement in her symptoms." Tr. 676; <u>see</u> <u>Batson</u>, 359 F.3d at 1195 (ALJ need not accept treating physician opinion inadequately supported by clinical findings or record as whole).

The ALJ also properly discounted Dr. Johnson's statement in his disability opinion that plaintiff's "traumatic brain injury" and "chronic pain issues" gave "support to a consideration of SSI." Tr. 563.  Clearly, as noted by the ALJ, this is an opinion concerning vocational issues and the Social Security program, neither of which are within Dr. Johnson's area of expertise. <u>See</u> Magellanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (ALJ properly may decline to accept even treating physician's opinion regarding vocational outlook or ultimate issue of disability if supported by record).  Citing to <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202-03 (9th Cir. 2001), plaintiff argues the ALJ may reject the uncontradicted opinion of a treating physician on the ultimate issue of disability only with clear and convincing reasons, supported by the substantial evidence in the record.  As discussed above, though, this is what the ALJ did.

Lastly, the ALJ did not err in failing to mention any of Dr. Johnson's objective findings, as argued by plaintiff.  First, plaintiff fails to point to any of such objective findings that would

REPORT AND RECOMMENDATION - 12

support Dr. Johnson's disability opinion.  Nor do any of the progress notes Dr. Johnson wrote, which contain the findings, provide any additional opinion regarding plaintiff's ability to work, let alone specific functional limitations.  Any error the ALJ may have committed in not citing in more detail Dr. Johnson's clinical findings is thus harmless.  See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

    D.    Dr. Rastall

A physical examination of plaintiff was performed in early August 2004, by John Rastall, M.D., who diagnosed her with "[m]ild posterior neck inflammation." Tr. 421.  In terms of actual clinical findings, Dr. Rastall stated as follows:

> On physical exam, the patient moves about fairly easily.  The cervical spinous processes are nontender to palpation.  There is pain to joint pressure over the superior insertion of the posterior neck column at the level of the occiput.  There is no erythema or swelling.  No limited range of motion.

Id.  Plaintiff argues the ALJ erred by not mentioning in his decision Dr. Rastall's examination or clinical findings.  Once more, however, plaintiff points to nothing in that examination's findings that would support a determination of disability or his alleged limitations.  Indeed, overall those findings strongly indicate plaintiff at most is only mildly impaired.

    E.    GAF Scores

A global assessment of functioning ("GAF") score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007).  A GAF score is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).  However, while a GAF score may be "of considerable help" to the ALJ, for example, in assessing a claimant's residual functional capacity, "it is not essential"

REPORT AND RECOMMENDATION - 13

to the accuracy thereof. Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002).  Thus, an ALJ's "failure to reference the GAF score" in assessing a claimant's residual functional capacity "standing alone" does not make the RFC assessment inaccurate. Id.  In other words, the mere fact that a low GAF score may have been assessed by a medical source is not in itself sufficient to establish disability.

       1.    Dr. Brown

In late April 2003, an examining psychologist, Paul Brown, Ph.D., assessed plaintiff with a GAF score of 48. Tr. 181; see Pisciotta, 500 F.3d at 1076 n.1 ("A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job.") (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 34); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning.").  Plaintiff argues the ALJ erred in failing to state any reasons for rejecting this GAF score.  The undersigned finds no error here.

In addition to assessing plaintiff with the above GAF score, Dr. Brown further opined in relevant part as follows:

> . . . The claimant's prognosis is guarded.  She has a long history of confusion, drug and alcohol abuse, marginal employment and there is nothing at this point that would suggest that she would be improving greatly in the near future.

> . . . The claimant states that she need [sic] a payee.  She is not able to manage her own funds; that seems wise.  The claimant could perform simple and repetitive tasks, but probably not detailed and complex ones.  The claimant has very little experience working with supervisors or coworkers and it is not known if she would be able to accomplish this.  She does not seem to have severe emotional problems with these.  As far as performing work activities on a consistent basis and maintaining a regular attendance, her mood swings would be a real problem at times with this and her ability to learn is not known how much this would be a problem also, so she would have some

difficulties with maintaining work on a regular basis.

Tr. 181.  The ALJ did not specifically address Dr. Brown's assessed GAF score.  However, with respect to plaintiff's ability to function, while the ALJ agreed plaintiff "would be able to perform simple and repetitive tasks, but not likely detailed or complex tasks," he gave "little weight" to Dr. Brown's opinion that plaintiff "would have some difficulties in maintaining work on a regular basis . . . in light of evidence that" she "was engaging in substance abuse until February 2003." Tr. 28.

Plaintiff does not challenge this determination, at least with any sufficient specificity to support a challenge thereto.  Regardless, the undersigned finds the ALJ properly discounted Dr. Brown's opinion on the basis that plaintiff continued to engage in substance abuse until at least February 2003, shortly before the evaluation Dr. Brown performed, as the substantial evidence in the record supports that finding. See Tr. 136-37, 139-42, 149, 173, 179, 186, 191, 196, 202, 206-08, 210-13, 240, 245-48, 276-77, 284, 329, 357, 416, 444, 450, 470-71, 578, 623, 627, 639, 642, 649, 652, 698; but see Tr. 458 (plaintiff reporting in mid-April 2004, that she was ten months clean and sober); 576 (plaintiff reporting in early October 2006, that she had been sober for only "a couple of years"); 626 (plaintiff reporting in late February 2006, that she wanted to drink).  As noted above, if substance abuse is a contributing factor material to the determination of disability, plaintiff cannot be found disabled.  The medical expert, Dr. Larry Hart, testified at the first hearing that plaintiff would be disabled through at least February 2003, when her substance abuse was included. Tr. 698.  Accordingly, the ALJ properly discounted Dr. Brown's opinion due to plaintiff's continuing substance abuse.  As such, the ALJ also was under no obligation to adopt the GAF score Dr. Brown assessed as well.

REPORT AND RECOMMENDATION - 15

1

2.      Dr. Dooley

2

In early September 2003, another examining psychologist, Tom M. Dooley, Psy.D.,

3

assessed plaintiff with a GAF score of 50. Tr. 186; see England, 490 F.3d at 1023, n.8 (GAF

4

score of 50 reflects serious limitations in individual's general ability to perform basic tasks of

5

daily life).  Here too the undersigned rejects plaintiff's assertion that the ALJ erred in failing to

6

specifically mention Dr. Dooley's assessed GAF score.  In terms of a functional assessment, Dr.

7

Dooley also opined at the time that plaintiff "appeared to be of Borderline Intelligence," and

8

9

"would have a difficult time maintaining consistent employment . . . with her emotional issues

10

compounded by her poor memory skills." Tr. 187.

11

The ALJ discounted this latter narrative portion of Dr. Dooley's functional assessment

12

for the following reasons:

13

14

. . . [S]ignificant weight has not been given to the September 2003 of Dr.
Dooley, that the claimant functions in the borderline range of intellectual

15

functioning and "would have a difficult time maintaining consistent
employment at this time with her emotional issues compounded by her poor

16

memory skills.["] (Exhibit 8F-50).  Dr. Dooley opined at the same time that
the claimant was less than credible during the evaluation and he was

17

suspicious of her low memory scores on testing.  Greater weight has been
given to the opinion of Dr. Litman that the claimant's intellectual function is

18

in the slightly below average range and her memory function is in a similar

19

range or slightly below that of her intellectual function.  Dr. Litman performed
the most recent and extensive evaluations of the claimant and also reviewed

20

the previous evaluations of Dr. Dooley and Dr. Brown.

21

Tr. 28-29; see also Tr. 182-87, 273-85.  Again, plaintiff does not specifically challenge the ALJ's

22

findings here.  The reasons the ALJ provided for rejecting the greater limitations found by Dr.

23

Dooley, furthermore, were all valid. See Bayliss , 427 F.3d at 1216; Weetman, 877 F.2d at 23.

24

In particular, the ALJ was not remiss in accepting the findings and opinion of Dr. Litman over

25

those of Dr. Dooley, including the higher GAF score of 55, indicating only moderate symptoms,

26

REPORT AND RECOMMENDATION - 16

assessed by Dr. Litman.[5] See Tr. 24, 283; see also Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (where examining physician opinion is based on independent clinical findings, it is within ALJ's discretion to disregard conflicting opinion in another examining physician's diagnosis). Accordingly, there was no error on the part of the ALJ here.

3.    Ms. Young and Ms. Davis

The record contains three mental health services review forms, dated April 7, 2005, October 20, 2005, and early April 2007, in which plaintiff was assessed with a GAF score of 48, 47 and 44 respectively. Tr. 453, 495, 652.  Those forms were completed by Ms. Young.  They also were signed by Naomi Davis, L.I.C.S.W., as Ms. Young's reviewer. See, e.g., 653.  Plaintiff argues the ALJ's failure to mention these GAF scores constitutes error as well.  As discussed above, however, the ALJ properly rejected Ms. Young's opinions that plaintiff was unable to engage in employment-related activities.  Although the three GAF scores noted herein were not assessed at those times, the undersigned again finds any error on the part of the ALJ in failing to specifically address those scores also to be harmless.

First, nothing in those forms on which the GAF scores are provided contain anything in the way of support for such low scores other than plaintiff's own subjective complaints, which, as discussed in greater detail below, the ALJ properly discounted. See Tonapetyan, 242 F.3d at 1149 (ALJ may disregard medical opinion premised on claimant's complaints where record supports ALJ in discounting claimant's credibility); see also Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999) (opinion of physician premised to large extent on claimant's own accounts of her symptoms and limitations may be

---

[5] "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 34).

REPORT AND RECOMMENDATION - 17

disregarded where those complaints have been properly discounted).  In addition, as discussed

elsewhere herein, the ALJ properly found the record showed plaintiff experienced improvement

with mental health treatment and medication management.

Lastly, as discussed above, the ALJ properly adopted the higher GAF score of 55 Dr.

Litman assessed, as being more reflective of plaintiff's functional capabilities.   The failure of

the ALJ to mention the GAF scores assessed by Ms. Young, therefore, was inconsequential to

the ALJ's ultimate disability determination, and thus any error the ALJ may have committed in

not doing so is harmless.  As for Ms. Davis, it is clear she merely signed as Ms. Young's review,

and did not make any independent findings of her own.  Thus, the same reasons for finding the

ALJ's failure here to be harmless applies to her as well.

III.    The ALJ's Step Three Determination

At step three of the sequential disability evaluation process, the ALJ must evaluate the

claimant's impairments to see if they meet or medically equal any of the impairments listed in 20

C.F. R. Part 404, Subpart P, Appendix 1. 20 C.F.R § 404.1520(d), § 416.920(d); Tackett v.

Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  If any of the claimant's impairments meet or equal

a listed impairment, he or she is deemed disabled. Id.  The burden of proof is on the claimant to

establish he or she meets or equals any of the impairments in the Listings. Tacket, 180 F.3d at

1098.  However, "[a] generalized assertion of functional problems is not enough to establish

disability at step three." Id. at 1100 (citing 20 C.F.R. § 404.1526).

A mental or physical impairment "must result from anatomical, physiological, or

psychological abnormalities which can be shown by medically acceptable clinical and laboratory

diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908.  It must be established by medical

evidence "consisting of signs, symptoms, and laboratory findings." Id.; see also SSR 96-8p, 1996

REPORT AND RECOMMENDATION - 18

WL 374184 *2 (determination that is conducted at step three must be made on basis of medical factors alone).  An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.

An impairment, or combination of impairments, equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." Id.; see also Sullivan v. Zebley, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment.") (emphasis in original).  However, "symptoms alone" will not justify a finding of equivalence. Id.  The ALJ also "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005).

The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings).  This is particularly true where, as noted above, the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment).

REPORT AND RECOMMENDATION - 19

In this case, the ALJ determined that based on the evidence in the record, including the testimony of the medical expert, Dr. Hart, plaintiff's substance abuse, along with her other impairments, met the requirements of Listings 12.02, 12.06, 12.08, and 12.09, during the period of April 12, 1999 to February 10, 2003. Tr. 23.  The ALJ also determined that if plaintiff stopped her substance abuse during that same period, none of her impairments – either singly or in combination – would meet or medically equal the criteria of any of those contained in the Listings. Id.  Specifically, the ALJ found in relevant part:

> . . . [D]uring the period April 12, 1999 to February 10, 2003 the claimant's mental impairments resulted in at least marked restriction of activities of daily living, at least marked difficulties in maintaining social functioning, and at least marked difficulties in maintaining concentration, persistence or pace.  In addition, Dr. Hart opined that she likely experienced four or more episodes of decompensation related to substance abuse, although such cannot be specifically identified in the record.
>
> . . .
>
> . . . [T]he claimant's mental impairments in the absence of substance abuse would result in mild restriction of activities of daily living, moderate difficulties in maintaining concentration, persistence or pace. . . . There is no indication the claimant has experience episodes of decompensation since February 10, 2003.  There is also no evidence the claimant meets the additional requirements of the "C" criteria.[6]
>
> In making this assessment, the opinion of Dr. Hart that in the absence of substance abuse the claimant experiences mild to moderate restriction of activities of daily living, moderate to marked difficulties in maintaining social functioning, and moderate to extreme difficulties in maintaining concentration, persistence or pace, has not been fully accepted.  Dr. Hart did not give any instances demonstrating "marked" or "extreme" limitations in

---

[6] With respect to each mental disorder contained in the Listings, 20 C.F.R. Part 404, Subpart P, Appendix 1, §12.00A states as follows: "Each listing, except 12.05 and 12.09, consists of a statement describing the disorder(s) addressed by the listing, paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations [in the areas of activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation]). There are additional functional criteria (paragraph C criteria) in 12.02, 12.03, 12.04, and 12.06 . . . We will assess the paragraph B criteria before we apply the paragraph C criteria. We will assess the paragraph C criteria only if we find that the paragraph B criteria are not satisfied. We will find that you have a listed impairment if the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied."

REPORT AND RECOMMENDATION - 20

any area after the claimant discontinued substance abuse in February 2003. His opinion appears inconsistent with the evidence of record which reveals improvement in functioning with discontinued substance abuse and minimal mental health treatment including case management twice per month counseling twice per month, and medication management monthly.  It is concluded that the claimant likely experiences no more than moderate limitations in any of the areas described above, as consistent with the GAF score of 55 (moderate symptoms) reported by Dr. Litman (Exhibit 13F).

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are not satisfied.

Tr. 23-24.

Plaintiff argues the ALJ erred in rejecting Dr. Hart's testimony regarding her limitations in the absence of substance abuse.  Specifically, plaintiff argues that Dr. Hart, unlike Dr. Litman, reviewed the entire record, and that Dr. Hart's testimony is fully consistent with the opinions of Dr. Brown, Dr. Dooley, Ms. Weston, and Ms. Young, in light of the GAF scores with which they assessed her.  As discussed above, however, the ALJ did not err in failing to specifically mention or adopt any of those GAF scores, but instead appropriately adopted the higher GAF score of 55 found by Dr. Litman.  In addition, that Dr. Hart may have reviewed the entire record is not alone a sufficient basis for granting his testimony greater weight than that of Dr. Litman, an examining psychologist.  As discussed above, Dr. Litman conducted extensive psychological testing as well as performed a detailed review of plaintiff's history – including the evaluations of Dr. Brown and Dr. Dooley – and an examination of her mental status.  See Tr. 273-83.

As pointed out by the ALJ, Dr. Hart provided no specific instances demonstrating the presence of marked or extreme limitations in any functional area in the absence of substance abuse, and such severe limitations are not consistent with the substantial medical evidence in the record, which supports the ALJ's RFC assessment discussed herein.  To the extent the record does contain objective evidence which supports greater restrictions than those found by the ALJ,

REPORT AND RECOMMENDATION - 21

also as discussed herein, that evidence was properly rejected by the ALJ.  Plaintiff further asserts

the ALJ erred by finding the record contained no evidence her impairments met the "C" criteria

of Listing 12.04.  Specifically, plaintiff argues the testimony and opinions of Drs. Hart, Brown,

Dooley, and Johnson, as well as that from Ms. Weston and Ms. Young, establishes she has a

medically documented history of a chronic mental disorder:

> [O]f at least two years' duration that has caused more than a minimal
> limitation of ability to do any basic work activities, with symptoms or signs
> currently attenuated by medication or psychosocial support, and . . .
>
> . . .
>
> 2.  A residual disease process that has resulted in such marginal adjustment
> that even a minimal increase in mental demands or change in the environment
> would be predicted to cause the individual to decompensate; . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04C.

Again, though, the ALJ properly discounted those aspects of the above medical opinion

sources to the extent they were inconsistent with the ALJ's assessment of plaintiff's residual

functional capacity.  Even if the ALJ erred in discounting those aspects, furthermore, plaintiff

has failed to show with any specificity – nor does the undersigned find – that they demonstrate

that even a "minimal" increase in mental demands or a change to the environment would cause

her to decompensate.  Accordingly, the undersigned finds the ALJ did not err in determining that

none of plaintiff's impairments met or medically equaled the Listings.

IV.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker,

694 F.2d 639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility

determination.  Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility

determination where that determination is based on contradictory or ambiguous evidence.  Id. at

REPORT AND RECOMMENDATION - 22

579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence.  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief."  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints."  Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering.  O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms.  Id.

The ALJ discounted plaintiff's credibility in part due to the inconsistencies between the objective medical evidence in the record and the severity of plaintiff's subjective complaints concerning her mental and physical limitations. Tr. 25-26.  A determination that a claimant's subjective complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement.  Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  As discussed above, the ALJ properly rejected those aspects of the objective medical

evidence in the record that indicated limitations more severe than those the ALJ included in his residual functional capacity.  Accordingly, it was appropriate for the ALJ to discount plaintiff's allegations of disabling limitations in part on this basis.  See Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir.1991) (en banc)) (emphasis added) (pain testimony may not be rejected solely because degree of pain alleged is not supported by objective medical evidence).

The ALJ also discounted plaintiff's credibility in part on the basis that she experienced improvement in her "pain complaints" with osteopathic manipulation. Tr. 26.  This too was a valid basis on which the ALJ properly could discount plaintiff's credibility.  See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999) (claimant's credibility may be discounted on basis of medical improvement.); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  Plaintiff does not challenge this basis for discounting her credibility.  In addition, the evidence in the record overall supports the ALJ's finding here.  See Tr. 565, 567-68, 570-73, 575, 584-86, 672, 674-75, 678.  Indeed, plaintiff reported in late March 2007, having experienced "75 percent improvement in her symptoms." Tr. 676.

The record also supports the ALJ's determination that plaintiff experienced improved functioning with both sobriety and medication management.  See Tr. 27, 175, 189, 199, 206-07, 211, 246, 463-66, 468, 470-71, 494, 635, 637, 641.  In late April 2006, for example, plaintiff reported that she "does well" in terms of her depression and anxiety, "as long as she continues to take her medications." Tr. 643.  Rather, it largely appears that it is only when plaintiff stops taking her medication that she experiences an increase in her symptoms. See, e.g., Tr. 216. Again, plaintiff asserts no error here, and the undersigned finds none.

The ALJ further noted plaintiff reported that she "was able to go out alone," that she was

REPORT AND RECOMMENDATION - 24

"trying to get her driver's license back, indicating that she believed she retained "sufficient mental and physical capacity to operate a motor vehicle safely," and that she was able "to go bowling every Tuesday." Tr. 27.  The ALJ noted as well that plaintiff continued "to function as a single parent for her youngest child." Id.  These too are all valid reasons for finding plaintiff to be not entirely credible.

To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284.  Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7.  The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id.

The above activities, as the ALJ indicated, show plaintiff functions – and believed herself to be capable of functioning – at a higher level than she has alleged.  Plaintiff argues in regard to her attempts to get back her driver's license, that the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  While true, this shows that at the very least plaintiff felt she had the physical and mental stamina to drive.  In addition, the record contains other evidence relating to driving, indicating plaintiff was not as disabled as she claims.  For example, in late June 2001, plaintiff reported that she had "a warrant out her . . . for driving on the beach and doing 'dough nuts.'" Tr. 162.  The fact that plaintiff was able to act as a single parent and go bowling every Tuesday, also calls her credibility into question on the issue of her ability to engage in activities of daily living.

The ALJ discounted plaintiff's credibility in part because the record showed she had lost

REPORT AND RECOMMENDATION - 25

jobs in the past for reasons other than due to her mental or physical impairments. Tr. 26.  The ALJ, for example, noted that "at least one of her failed jobs was related to inability to cope with a situation which involved infidelity with a coworker which was associated with substance abuse," that plaintiff "reported to Dr. Litman that her work history was limited because she was 'primarily a mother,'" and that she "reported quitting several jobs of her own volition rather than an inability to perform the duties of those jobs." Id.

Plaintiff argues these reports are irrelevant, as they concern a period of time prior to when she alleges she became disabled.  However, it is appropriate for an ALJ to discount a claimant's credibility based on the claimant's poor work history, as well as a lack of propensity to work in a claimant's lifetime. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).  The ALJ's decision to discount plaintiff's credibility on this basis is further bolstered by plaintiff's report in early July 2001, that she was "not looking for work" because she" did "not feel motivated." Tr. 152. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (claimant's motivation to work and issue of secondary gain in rejecting symptom testimony may be considered by ALJ); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992).

The ALJ discounted plaintiff's credibility for the following reasons:

> The undersigned finds the claimant's allegations that her limitations in her ability to work during the time period April 12, 1999 to February 10, 2003, were not significantly related to substance abuse are not credible.  Mental health treatment records dated May 2002 reveal the claimant reported she was addicted to methamphetamine. (Exhibit 14F-188).  On October 25, 2002 it was reported she was engaging in substance abuse and was not attending counseling appointments consistently or taking medication. (Exhibit 18F-322).  She has a history of multiple criminal convictions associated with substance abuse.  She acknowledged to Dr. Litman in November 2004 that her poor job history had been related to alcohol abuse.

Tr. 26.  This evidence certainly calls into question plaintiff's allegation that she was unable to work during that time period due to mental or physical impairments other than substance abuse.

REPORT AND RECOMMENDATION - 26

1   In addition, the fact that plaintiff failed to attend counseling appointments or take her medication

2   consistently, alone is a valid basis upon which to discount her credibility. See Fair v. Bowen, 885

3   F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not following prescribed course

4   of treatment can cast doubt on sincerity of claimant's testimony).

5   　　　　Finally, the ALJ pointed out the "many inconsistencies between" plaintiff's "reports and

6   the evidence of record" noted by Dr. Litman:

7

8   　　　　. . . He noted that she had denied a criminal history and a history of substance
        abuse to Dr. Dooley . . . However, to Dr. Litman she acknowledged a
9       significant history of drug and alcohol abuse for which she underwent
        chemical dependency treatment and convictions for assault in 1991 and for
10      felony hit and run in 1998. (Exhibit 19F-355). In addition, Dr. Litman
        believed the claimant demonstrated malingering behavior regarding her
11      memory impairment, especially associated with her performance on the
        Weschler Memory Scale III (WMS III), which he described in detail. (Exhibit
12      19F-348-349). He also noted the claimant demonstrated excellent memory for
        exact dates. He opined that this is inconsistent with significant short-term
13      memory impairment which would be expected to inhibit the encoding and
        storing of information. (Exhibit 19F-346).
14

15   Tr. 27. The ALJ further noted that Dr. Litman observed plaintiff was "invested in playing the

16   sick role in being significantly compromised." Tr. 28. In attempting to rebut these reasons for

17   discounting her credibility, plaintiff points to a different memory test Dr. Litman gave her, which

18   indicated "she was not malingering, at least in terms of this measure," and which Dr. Litman

19   admitted threw "a wrench into how to understand her WMS-III." Tr. 282. What plaintiff fails to

20   point out, though, is that Dr. Litman immediately went on to state he believed this other test "was

21   so simple and straightforward that she had trouble with the out and out manipulation of it." Id.

22   Plaintiff also ignores the many other inconsistencies Dr. Litman noted in her self-reporting. The

23   undersigned thus finds the ALJ did not err here or overall in discounting plaintiff's credibility.

24   V.   　The ALJ's Assessment of Plaintiff's Residual Functional Capacity

25   　　　　If a disability determination "cannot be made on the basis of medical factors alone at step

26

REPORT AND RECOMMENDATION - 27

three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work.  Id.  It thus is what the claimant "can still do despite his or her limitations."  Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record.  Id.  However, a claimant's inability to work must result from his or her "physical or mental impairment(s)."  Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments."  Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence."  Id. at *7.

As noted above, the ALJ found plaintiff had the residual functional capacity to perform simple, repetitive work at all exertional levels, with the limitation that she could perform only occasional gripping with the left, non-dominant hand.  Tr. 24.  Plaintiff argues the ALJ erred in assessing plaintiff's RFC by not including all of the limitations assessed by Dr. Brown, Dr. Johnson, Ms. Weston, and Ms. Young.  As discussed above, however, the ALJ did not err in his evaluation of their findings and opinions, and thus the ALJ also did not err in declining to include any additional limitations stemming therefrom in his assessment of plaintiff's residual functional capacity.

Plaintiff further argues the ALJ failed to include in his RFC assessment several marked mental functional limitations Charles Regets, Ph.D., and William Lysak, Ph.D., two consulting,

REPORT AND RECOMMENDATION - 28

non-examining psychologists, assessed her with in 2003. <u>See</u> Tr. 268-69.  But those limitations were based on a diagnosis of poly-substance abuse in addition to a mood disorder (<u>see</u> Tr. 257, 262, 268-69), and, as such, they cannot form a basis for finding her disabled, given that, as discussed above, the ALJ properly found her substance abuse to be a factor material to the determination of disability.  The ALJ, therefore, was not obligated, and did not err in declining, to not include those limitations in his assessment of plaintiff's RFC.

VI.     <u>The ALJ's Step Four Determination</u>

        The ALJ determined at step four of the sequential disability evaluation process that plaintiff was capable of performing her past work as a production assembler. Tr. 30.  Plaintiff argues this determination was improper in light of the ALJ's errors in evaluating the medical evidence in the record and in assessing her residual functional capacity.  As discussed above, however, the ALJ did not err either in evaluating the medical evidence or in assessing plaintiff's RFC.  Accordingly, this basis for asserting error at step four also is without merit.

        In regard to the ALJ's specific determination at step four, furthermore, the ALJ's analysis of plaintiff's past relevant work and her ability to perform that work was proper:

> In comparing the claimant's residual functional capacity exclusive of substance abuse with the physical and mental demands of this work, the undersigned finds that the claimant would be able to perform it as generally performed in the national economy.  As classified in *The Dictionary of Occupational Titles* [("DOT")], the job of production assembler is unskilled work . . . requiring light exertion.  The vocational expert testified that while the job does require frequent reaching, handling and fingering, given the claimant's residual functional capacity, which involves no restrictions in the use of the dominant right hand, the claimant would be capable of performing this job utilizing the left hand as an assist.  The testimony of the vocational expert is consistent with the claimant's history.  Her left hand impairment is longstanding and she was able to work as a production assembler despite her impairment in the past. . . .

Tr. 30.  Plaintiff argues the ALJ erred in relying on the vocational expert's testimony here, as it

REPORT AND RECOMMENDATION - 29

was inconsistent with the information contained in the DOT.  There is no error here.  The ALJ

may rely on vocational expert testimony that "contradicts the DOT, but only insofar as the record

contains persuasive evidence to support the deviation." Johnson v. Shalala, 60 F.3d 1428, 1435

(9th Cir. 1995).  As noted by the ALJ, however, the vocational expert in this case did provide a

detailed explanation as to why plaintiff could perform her past relevant work despite the fact that

the DOT requires frequent reaching.  Plaintiff has provided no argument as to why the vocational

expert's explanation is insufficient here.  Her argument, therefore, is rejected.

VII.   The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the disability

evaluation process the ALJ must show there are a significant number of jobs in the national

economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20

C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this through the testimony of a

vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the

"Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir.

2000).  In this case, the ALJ found plaintiff also capable of performing other jobs existing in

significant numbers in the national economy based on the testimony of the vocational expert,

who testified that such other jobs existed for an individual with the same age, education, work

experience and residual functional capacity as plaintiff. Tr. 30.  Plaintiff argues the ALJ erred

here as well.  But because the ALJ properly found plaintiff was not disabled at step four of the

sequential disability evaluation process, he was not required to go on to step five, and therefore

the undersigned finds it unnecessary to address this claim here.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ properly concluded

REPORT AND RECOMMENDATION - 30

plaintiff was not disabled, and should affirm the ALJ's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **June 11, 2010**, as noted in the caption.

DATED this 17th day of May, 2010.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 31